## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brock Fredin,

Case No. 19-cv-2864 (SRN/HB)

Plaintiff,

v.

**LINDSEY MIDDLECAMP'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER**

James Street, Patrick C. Diamond, And Lindsey Middlecamp,

Defendants.

Plaintiff Brock Fredin has initiated yet another lawsuit against Defendant Lindsey Middlecamp as part of his scheme to harass her and misuse the court system. This is the fifth lawsuit Fredin has asserted against Middlecamp, each repeating the very same allegations as the previously filed lawsuits[1]. Fredin's current lawsuit is made in bad faith and, similar to the other lawsuits, is based on his personal animus against Middlecamp and judicial officers presiding over the Ramsey County Harassment Restraining Order proceeding ("HRO").

Fredin's Amended Complaint should be dismissed because 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments prohibit only *governmental* actions, they do not prohibit Middlecamp's *private* actions and, consequently, fail to state a claim against her. Fredin's motion for a temporary restraining order must also be denied if the claims are dismissed. Even if the claims survive, the Anti-Injunction Act prohibits this Court from

---

[1] *See Fredin v. Middlecamp* (17-cv-03058); *Fredin v. Miller et al.* (18-cv-00466); *Fredin v. Clysdale et al.* (18-cv-00510); *Fredin v. Miller et al.* (19-cv-03051).

issuing the requested injunction. The fact that Fredin has failed to establish the required four factors for issuance of a temporary injunction also counsels in favor of denying the motion.

## BACKGROUND

Here, Fredin is suing Middlecamp, state court judge Patrick C. Diamond and state court referee James Street pursuant to 42 U.S.C. § 1983. (Am. Compl. ¶ 1 [Doc. No. 9].) Fredin also moves for a temporary restraining order or preliminary injunction to enjoin the enforcement of a harassment restraining order issued by Judge Diamond on July 26, 2019, on a petition filed by Middlecamp ("2019 HRO") [Doc. 35]. The 2019 HRO and a final order are subject to an evidentiary hearing that began in December 2019 and is scheduled to conclude in March 2020 in *Middlecamp v. Fredin*, Case No. 62-HR-CV-19-621 (Ramsey Cty. Dist. Ct). (Pl.'s Mem. Supp. Second Mot. TRO at 1 [Doc. No. 35].)

Fredin alleges in this action that the 2019 HRO violates the First and Fourteenth Amendments. (Am. Compl. ¶¶ 15–17, 25–42.) He also claims a violation of the Fourth Amendment occurred when he was served with the 2017 HRO. (*Id.* ¶¶ 43–49.)

On December 4, 2019, Judge Diamond and Referee Street (collectively, "State Defendants") filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). On February 5, 2020, the Court issued a Report and Recommendation ("R&R") ruling that the judicial immunity doctrine applies to the State Defendants and shields them from Fredin's claims. [Doc. 61 at 5.] With respect to Fredin's request for injunctive relief against the

State Defendants, the Court determined that "there is no chance of Fredin's success on the merits of his claims because the State Defendants are immune from suit." (*Id*. at 8.)

Middlecamp did not initially file a response to Fredin's motion for injunctive relief, as Middlecamp was never properly served with a copy of the summons and complaint or with Fredin's motion for injunctive relief. (*See* Order [Doc. No. 45] (explaining likely service deficiencies); Fredin Letter [Doc. No. 48] (confirming Middlecamp was never personally served with the summons and complaint).) On January 24, 2020, Middlecamp filed a letter describing the service deficiencies and asking for leave to file a motion to dismiss on or before February 11, 2020. (Breyer Letter at 1–2 [Doc. No. 57].) The Court granted the request. [Doc. No. 59].  The Court also held in abeyance Fredin's motion injunctive relief until Middlecamp had an opportunity to respond. [Doc. No. 35]. This memorandum serves as support for Middlecamp's motion to dismiss and constitutes her response in opposition to Fredin's motion for injunctive relief.

## ARGUMENT

### I.    Standard of Review

All claims against Middlecamp are asserted under the United States Constitution and are subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In addition, "Rule 12(b)(6) authorizes a

court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490

U.S. 319, 326 (1989). Whether a complaint states a cause of action is a question of law.

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). "At a minimum . . . a complaint must

contain facts sufficient to state a claim as a matter of law and must not be merely conclusory

in its allegations." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th

Cir. 1998).

**II**.      **42 U.S.C. § 1983 Claims do not Apply to Private Citizens**

To support a §1983 claim, the "the conduct at issue 'must have been committed by

a person acting under color of state law.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Such "state action occurs

where the challenged action of a private party is 'fairly attributable' to the state." *Logan v.

Bennington Coll. Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995) (quoting *Lugar v. Edmondson

Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

Here, Middlecamp is a private actor and the acts complained of took place in pursuit

of an HRO that she seeks for herself, personally, and not on behalf of a governmental

agency. Counts 1 – 4 of the Amended Complaint all relate to an HRO Order issued by the

Ramsey County District Court. Middlecamp did not issue that Order and she had no

authority over its terms. There are no allegations in the Amended Complaint that support

the notion that Middlecamp was acting on behalf of a governmental entity in pursuit of her

HRO.  Because the acts alleged relate to Middlecamp's actions as a private citizen, Fredin's

§ 1983 claims do state a claim for relief and must be dismissed.

### III.    The First and Fourteenth Amendments Do not Apply to Private Citizens

The First Amendment provides in relevant part that "Congress shall make no law ... abridging the freedom of speech." The Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law ...." § 1. The text and original meaning of those Amendments, as well as this Court's longstanding precedents, establish that the Free Speech Clause prohibits only *governmental* abridgment of speech. The Free Speech Clause does not prohibit *private* abridgment of speech. See, *e.g., Denver Area Ed. Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727, 737, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (plurality opinion); *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, Inc., 515 U.S. 557, 566, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); cf. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974).

According to the Amended Complaint, the violations of the First and Fourteenth Amendments emanate from the HRO issued by the Ramsey County District Court and Fredin's eventual incarceration. (Am. Compl. at ¶15-18, 23.) While Fredin blames Middlecamp for the actions of the Courts, Middlecamp did not issue the HRO or rule in a judicial capacity on Fredin's incarceration and, therefore, there are no allegations in the Amended Complaint supporting the claim. Even if it was alleged that Middlecamp violated Fredin's First and Fourteenth Amendment rights, those Amendments do not prohibit

*private* abridgment of speech. Fredin' claims under the First and Fourteenth Amendments fail to state a claim and must be dismissed.

## IV.    The Fourth Amendment Does not Apply to Private Citizens

Fredin claims that Middlecamp violated the Fourth Amendment when "Defendants [] serve[d] Defendant Middlecamp's April 14, 2107 harassment restraining order by way of illegal entry to Plaintiff's residence." (Am. Compl. at ¶44.)

To begin, it is not alleged that Middlecamp served the HRO or had any part in its service (other than being named as the petitioner). For that reason, the pleading is deficient on its face and must be dismissed. Even if she was alleged to have participated in the service of the HRO, the Fourth Amendment does not apply to private individuals, so long as the private party is "'not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (quoting *Walter v. United States,* 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)).

Here, Middlecamp did not "illegally ent[er] [in]to Plaintiff's residence," she was not even present during the actions Fredin complains about. As pleaded in the Amended Complaint, the service of the HRO was done by law enforcement (Am. Compl. at ¶23), whose actions with regard to the no-knock warrant and service of the HRO have already been litigated and dismissed by this Court[2].

---

[2] *See Fredin v. Clysdale et al.* (18-cv-00510). United States Magistrate Judge Hildy Bowbeer in her Report and Recommendation dated December 20, 2018 dismissed the Fourth and Fourteenth Amendment claims against Defendants. [Doc. 106.]  The Order of Judge Susan Richard Nelson, dated February 21, 2019, approved in its entirety the Report and Recommendation [Doc. 113].

V.      **Fredin is not Entitled to a Preliminary Injunction or a Temporary Restraining Order**

   A.      **This Court is Prohibited by the Anti-Injunction Act from Enjoining a State Court Proceeding**

The Anti-Injunction Act is a United States federal statute that prohibits any federal court from issuing an injunction against proceedings in any state court. The Act was enacted to alleviate states' fears of federal power. The Act states:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The Anti–Injunction Act prohibits federal courts from enjoining proceedings in state courts unless the injunction falls within one of three exceptions. *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970). Courts must construe the exceptions to the Anti–Injunction Act narrowly and resolve doubts in favor of letting the state action proceed. *Id.* at 297, 90 S.Ct. at 1748; *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977).

Here, none of the three exceptions apply. First, there is no "authorized Act of Congress" preventing the HRO from proceeding. Second, the federal court is not exercising jurisdiction over the state HRO proceeding (nor could it). Third, as revealed by the Amended Complaint, the desired injunction is not being sought as means to protect or effectuate an order from this Court.  To the contrary, the only reason Fredin is seeking an injunction is because he fears an adverse ruling in that proceeding.

Because the Anti–Injunction Act prohibits this Court from enjoining the state HRO proceedings, Fredin's motion must be denied.

### B.   Plaintiff Cannot Satisfy the Four Factor Test for a preliminary injunction or a temporary restraining order

Assuming *arguendo* that the Court does not dismiss the claims under Rule 12 and, further, ignores the Anti–Injunction Act, Fredin's motion nevertheless fails to satisfy the four factor test employed by this Court when deciding to grant a temporary restraining order. The four factors governing a court's decision are: "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 844 (8th Cir. 2005) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

With respect to Fredin's request for injunctive relief against Judge Diamond and Referee Street, the Court has already ruled that "there is no chance of Fredin's success on the merits of his claims because the State Defendants are immune from suit." (Doc. 61, citing *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005)). Thus, an injunction cannot issue against the State Defendants. Having determined that the judicial officers presiding over the HRO proceeding are immune from suit, and are free to proceed at their own discretion in conducting the HRO proceeding, the Court cannot now rule that the same HRO proceeding be enjoined simply because Fredin has named Middlecamp as a defendant. As explained above, neither 42 U.S.C. § 1983 nor the

Constitutional Amendments have any application to the conduct of private individuals such as Middlecamp. Furthermore, the Anti–Injunction Act prohibits this Court from enjoining the state HRO proceedings. For these reasons, Fredin has no chance of success on the merits of his claims.

As for factors two (irreparable harm) and three (balancing the harms), Fredin has established no harm at all for having to participate in an evidentiary hearing before a fair and impartial judicial officer.  Similarly, he has failed to establish that an issuance of the preliminary injunction in this case is in the public interest. Clearly, the issuance of a preliminary injunction would not be in the public interest, as it would set a precedent for bad actors such as Fredin to use federal courts to usurp the authority of state courts. It would also severely prejudice Middlecamp's right to obtain an HRO that is needed to protect her from Fredin's relenting harassment.

## CONCLUSION

For the foregoing reasons, Defendant Middlecamp respectfully request that the Court dismiss the claims against her pursuant to Rule 12(b)(6) and, further, deny Plaintiff's motion of a temporary restraining order.

Date:  February 11, 2020              **KUTAK ROCK LLP**

By:  */s/ K. Jon Breyer*
K. Jon Breyer (MN #302259)
60 South Sixth Street
Suite 3400
Minneapolis, MN  55402
Telephone:   (612) 334-5057
Jon.breyer@kutakrock.com

***Attorneys for Defendant Lindsey Middlecamp***